# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |  |
|---|---|---|
| DAMAKA, INC., | § § § | Case No. |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| THE CIGNA GROUP, CIGNA HEALTH AND LIFE INSURANCE COMPANY, CIGNA HEALTHCARE OF TEXAS, INC. | § § § § | |
| Defendants. | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Damaka, Inc. ("Damaka" or "Plaintiff"), for its Complaint against Defendants The Cigna Group ("Cigna Group"), Cigna Health and Life Insurance Company ("Cigna Health"), and Cigna Healthcare of Texas, Inc. ("Cigna Texas") (collectively, "Cigna" or "Defendants") alleges as follows:

## THE PARTIES

1.      Damaka is incorporated under the laws of the State of Texas, with a place of business located at 700 South Central Expressway, Suite 400, Allen, Texas 75013.

2.      Upon information and belief, Defendant Cigna Group is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 1640 Dallas Parkway, Plano, Texas 75093.

3.      Upon information and belief, Defendant Cigna Health is a corporation organized and existing under the laws of the State of Connecticut, with a place of business located at 1640 Dallas Parkway, Plano, Texas 75093.

4.     Upon information and belief, Defendant Cigna Texas is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 1640 Dallas Parkway, Plano, Texas 75093 and that Defendant Cigna Texas may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

5.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

6.     This Court has specific and personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, Defendants have sufficient minimum contacts with this forum because Defendants have physical locations and regularly transact substantial business in the State of Texas and in this Judicial District. Further, Defendants have, directly or through subsidiaries or intermediaries, committed acts of patent infringement in the State of Texas and in this Judicial District as alleged more particularly below.

7.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Defendants are registered to do business in Texas and, upon information and belief, Defendants have transacted business in this Judicial District, have committed acts of direct and indirect infringement in this Judicial District, and have regular and established places of business in this Judicial District. Defendants are subject to personal jurisdiction in this Judicial District and have committed acts of patent infringement in this Judicial District. On information and belief, Defendants through their own acts and/or through the acts of others, make, use, sell, offer to sell,

and/or imports infringing products within this Judicial District, regularly do and solicit business in this Judicial District, and have the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one.

8.     Upon information and belief, Defendants maintain a physical place of business in this District at 1640 Dallas Parkway, Plano, Texas 75093. Collin County tax records list Cigna Health as the owner of this property:



9.     Cigna Group is actively advertising at least 15 jobs in this Judicial District.



---

**PATENTS-IN-SUIT**

10.    On May 5, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,027,032 (the "'032 Patent") entitled "System And Method For Providing Additional Functionality To Existing Software In An Integrated Manner." A true and correct copy of the '032 Patent is attached hereto as Exhibit A.

11.    On February 21, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,578,092 (the "'092 Patent") entitled "System And Method For Providing Additional Functionality To Existing Software In An Integrated Manner." A true and correct copy of the '092 Patent is attached hereto as Exhibit B.

12.    On February 23, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,270,744 (the "'744 Patent") entitled "System And Method For Providing Additional Functionality To Existing Software In An Integrated Manner." A true and correct copy of the '744 Patent is attached hereto as Exhibit C.

13.    On February 7, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,576,046 (the "'046 Patent") entitled "System And Method For Providing Additional Functionality To Existing Software In An Integrated Manner." A true and correct copy of the '046 Patent is attached hereto as Exhibit D.

14.    On March 12, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,930,362 (the "'362 Patent") entitled "System And Method For Providing Additional Functionality To Existing Software In An Integrated Manner." A true and correct copy of the '362 Patent is attached hereto as Exhibit E.

15.    The '032 Patent, the '092 Patent, the '744 Patent, the '046 Patent, and the '362 Patent are collectively referred to as the "Patents-in-Suit."

16.     Damaka is the sole and exclusive owner of all right, title, and interest in and to the Patents-in-Suit, and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Damaka also has the right to recover all damages for infringement of the Patents-in-Suit, as appropriate under the law.

## INFRINGEMENT ALLEGATIONS

17.     The Patents-in-Suit generally cover methods for communication, and audio and video ("A/V") capabilities on computers (with "computers" including mobile devices) and computer applications. The technologies were developed by Sivakumar Chaturvedi, Satish Gundabathula, and Rashmi Hiremath. These techniques are incorporated into web and mobile applications made by Cigna.

18.     Cigna has manufactured, used, marketed, distributed, sold, offered for sale, exported from, and imported into the United States, products that infringe the Patents-in-Suit. These Accused Products include, at a minimum, all versions and variants of the MDLIVE application, including, but not limited to, MDLIVE for desktop, MDLIVE for Android, MDLIVE for iOS, and MDLIVE for iPad, since 2019.

19.     Damaka has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.

20.     Upon information and belief, Cigna has had knowledge and notice of the Patents-in-Suit, and of its infringement thereof since the issuance of the patents. Cigna, as a major insurance company, with a focus on technology[3], regularly monitors advances in communication, and was aware of should have been aware of Plaintiff's patented inventions due to their impact on Cigna's own business. Alternatively, to the extent that Cigna avoided actual knowledge of the

---

[3] *See* https://newsroom.cigna.com/digital-transformation-in-health-care

Patents-in-Suit, and its infringement thereof, it was willfully blind. Upon information and belief, to the extent it lacked actual knowledge of infringement, Cigna deliberately avoided learning of infringement, despite subjectively believing that there was a high probability that it infringed Plaintiff's patents, specifically the Patents-in-Suit. Upon information and belief, Cigna has adopted a policy or practice of not reviewing the patents of others, including those related to Cigna's specific industry and specifically those of Plaintiff's, thereby remaining willfully blind to the Patents-in-Suit. Upon information and belief, Cigna lacks written policies disseminated to employees regarding the monitoring or avoidance of patent infringement by Cigna and lacks mechanisms for employees to report patents they believe Cigna may be infringing. Upon information and belief, Cigna and its employees understood that there was a high likelihood that patents filed on innovations by Plaintiff read on the Accused Products.

## COUNT I
### (Infringement of the '032 Patent)

21.     Paragraphs 1 through 20 are incorporated herein by reference as if fully set forth below.

22.     Damaka has not licensed or otherwise authorized Cigna to make, use, offer for sale, sell, or import any products that embody the inventions of the '032 Patent.

23.     Cigna has and continues to directly infringe the '032 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '032 Patent. These infringing products include, at a minimum, all versions, and variants of Cigna's MDLIVE mobile applications.

24.     Cigna directly infringes at least claim 15 of the '032 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method of

receiving, by a function block stored in the memory of a mobile device, a request for an audio/video ("A/V") call from a superblock application stored in the memory of the mobile device; determining, by the function block, that the superblock application is authorized to access A/V call functionality provided by the function block; determining, by the function block, that the A/V call requires access to a resource that is external to the mobile device; establishing, by the function block, the A/V call between the superblock application and the resource via a network interface, wherein such establishing is not supported by the superblock application; providing, by the function block, video output for the A/V call to a video window within a display window of the superblock application on the mobile device, wherein the video window is displayed simultaneously with the display window of the superblock application on a screen of the mobile device; and providing, by the function block, audio for the A/V call via the mobile device.

25.    The Accused Products practice a method of receiving, by a function block stored in the memory of a mobile device, a request for an audio/video (A/V) call from a superblock application stored in the memory of the mobile device. For example, upon information and belief, Cigna's MDLIVE provides a function that may be called from a superblock application (i.e., the main application) to enable A/V calling. For example, MDLIVE provides "telehealth," and allows users to have "video call[s] with a doctor" (i.e., A/V calls). For example, upon information and belief, MDLIVE includes a function block stored in memory of a device (whether it be an iPhone or Android). For example, upon information and belief, this functionality is enabled by a function block within a superblock application (MDLIVE). Upon information and belief, this function block receives a request from the superblock application to initiate the A/V call.



˅ I've never had a video call with a doctor. What should I expect?

Many medical conditions you seek in-person care for can be effectively treated via video or phone call. Your MDLIVE doctor will discuss your symptoms and provide a reliable diagnosis and treatment plan. Your doctor can order prescriptions to your preferred pharmacy and provide short-term renewals of existing medications. A summary of your visit can be shared with your local doctor upon request. MDLIVE doctors are specially trained in conducting telehealth appointments.

[4]

**App Store** Preview

This app is available only on the A

**MDLIVE** 17+
Virtual Doctor Visits 24/7
MDLIVE, Inc.

#90 in Medical
★★★★☆ 4.7 • 89.7K Ratings

Free

[5]

26.     The Accused Products practice a method of determining, by the function block, that the A/V call requires access to a resource that is external to the mobile device. For example, upon information and belief, the function block in MDLIVE utilizes calls to remote servers to enable A/V call functionality.

27.     The Accused Products practice a method of establishing, by the function block, the A/V call between the superblock application and the resource via a network interface, wherein the establishing is not supported by the superblock application. For example, upon information and belief, the MDLIVE function block allows a user to establish an A/V Call between the superblock

---

[4] https://www.mdlive.com/frequently-asked-questions
[5] https://apps.apple.com/us/app/mdlive/id839671393

application and a resource. Upon information and belief, this is done over a network, such as a 5G or internet connection. Shown below are the network requirements for the desktop version of the MDLIVE application; both the iOS and Android versions of MDLIVE applications also require similar network connections.



28.     The Accused Products practice a method of providing, by the function block, video output for the A/V call to a video window within a display window of the superblock application on the mobile device, wherein the video window is displayed simultaneously with the display window of the superblock application on a screen of the mobile device. For example, upon information and belief, MDLIVE presents a display window similar to the one shown below, which is within the window of the superblock application.

---

[6] https://www.mdlive.com/frequently-asked-questions



29.    ˋThe Accused Products practice a method of providing, by the function block, audio for the A/V call via the mobile device. For example, upon information and belief, the MDLIVE function block provides audio for the A/V call.

30.    Cigna indirectly infringes one or more claims of the '032 Patent by knowingly and intentionally inducing others, including Cigna customers and end-users of the Accused Products, as well as products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Cigna's MDLIVE application.

31.    Cigna indirectly infringes one or more claims of the '032 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Cigna's customers and end-users,

---

[7] https://www.mdlive.com/about-us

in this District and throughout the United States. For example, Cigna's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '032 Patent. Cigna induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and as well as by providing documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. As a result of Cigna's inducement, Cigna's customers and end-users use the Accused Products in a way Cigna intends and directly infringe the '032 Patent. Cigna performs these affirmative acts with knowledge of the '032 Patent and with the intent, or with willful blindness, that the induced acts directly infringe the '032 Patent.

32.     Cigna indirectly infringes one or more claims of the '032 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and throughout the United States. Cigna's affirmative acts of selling and offering to sell the Accused Products in this District and throughout the United States, as well as causing the Accused Products to be manufactured, used, sold and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '032 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '032 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Cigna to be specifically made or adapted for use in the infringement of the '032 Patent. Cigna performs these affirmative acts with knowledge of the '032 Patent and with intent, or with willful blindness, that they cause the direct infringement of the '032 Patent.

33.    Damaka has suffered damages as a result of Cigna's direct and indirect infringement of the '032 Patent in an amount to be proven at trial.

## COUNT II
### (Infringement of the '092 Patent)

34.    Paragraphs 1 through 20 are incorporated herein by reference as if fully set forth below.

35.    Damaka has not licensed or otherwise authorized Cigna to make, use, offer for sale, sell, or import any products that embody the inventions of the '092 Patent.

36.    Cigna has and continues to directly infringe the '092 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '092 Patent. These products include at least all versions and variants of Cigna's MDLIVE mobile applications.

37.    For example, Cigna directly infringes at least claim 1 of the '092 Patent by making, using, offering to sell, selling, and/or importing into the United States a computer program product in a non-transitory computer readable medium for use in a data processing system that comprises a processor coupled to a network interface, the computer program product that holds computer program instructions that comprise a function block, the function block having audio/video (A/V) call functionality, the function block being operative when executed by the processor to: receive from a superblock application a request for an audio/video (A/V) service; determine that the superblock application is authorized to access the A/V service functionality; determine that the A/V service requires access to a resource that is external to the data processing system; establish the A/V service between the superblock application and the resource via the network interface, wherein establishing is not otherwise supported by the superblock application; provide video

output for the A/V service to a video window within a display window associated with the superblock application, the video window displayable simultaneously with the display window of the superblock application; and provide audio for the A/V service.

38.    The Accused Products are computer program products in a non-transitory computer readable medium for use in a data processing system that comprises a processor coupled to a network interface, the computer program product holds computer program instructions that comprise a function block, the function block having audio/video (A/V) call functionality, and the function block is operative when executed by the processor. For example, upon information and belief, Cigna's MDLIVE is a computer program that ultimately resides on a mobile phone, such as an iPhone. On information and belief, iPhones (or Android phones) contain a data processing system that comprises a processor coupled to a network interface. For example, upon information and belief, MDLIVE contains a function block for A/V call functionality, as shown below.



8

I've never had a video call with a doctor. What should I expect?

Many medical conditions you seek in-person care for can be effectively treated via video or phone call. Your MDLIVE doctor will discuss your symptoms and provide a reliable diagnosis and treatment plan. Your doctor can order prescriptions to your preferred pharmacy and provide short-term renewals of existing medications. A summary of your visit can be shared with your local doctor upon request. MDLIVE doctors are specially trained in conducting telehealth appointments.

9

39.    The Accused Products receive from a superblock application a request for an audio/video (A/V) service. For example, upon information and belief, the superblock application may receive an A/V call to perform telehealth services.

40.    The Accused Products determine that the superblock application is authorized to access the A/V service functionality. For example, upon information and belief, to utilize any of MDLIVE's A/V call resources, the user must have an account. Furthermore, upon information and

---

8 https://apps.apple.com/us/app/mdlive/id839671393
9 https://www.mdlive.com/frequently-asked-questions

belief, the function block makes remote server calls that require the superblock application to have some kind of authorization to perform (e.g., an auth token).

> ⌄ How do I create an account?
>
> The fastest way to create a new account with MDLIVE is to click CREATE MY ACCOUNT below or located on the top right of the navigation bar.
>
> 1. Go to the MDLIVE Homepage.
> 2. Click on "Create my account."
> 3. Fill in your details to log in and schedule an appointment.
>
> **CREATE MY ACCOUNT**

[10]

41.    The Accused Products determine that the A/V service requires access to a resource that is external to the data processing system. For example, upon information and belief, Cigna's MDLIVE requires access to a remote server.

42.    The Accused Products establish the A/V service between the superblock application and the resource via the network interface, wherein establishing is not otherwise supported by the superblock application. For example, upon information and belief, MDLIVE allows a user to establish an A/V Call between the superblock application and a resource (e.g., a remote server). Upon information and belief, this is done over a network, such as, 5G or the internet.

43.    The Accused Products provide video output for the A/V service to a video window within a display window associated with the superblock application, the video window displayable simultaneously with the display window of the superblock application. For example, upon information and belief, MDLIVE has a window displayable for the A/V call within the display of the window of the superblock application, similar to the one pictured below.

---

[10] https://www.mdlive.com/frequently-asked-questions



44.    The Accused Products provide audio for the A/V service. For example, MDLIVE provides audio and video calls.

---

11 https://apps.apple.com/us/app/mdlive/id839671393



45.     Cigna indirectly infringes one or more claims of the '092 Patent by knowingly and intentionally inducing others, including Cigna customers and end-users of the Accused Products, as well as products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Cigna's MDLIVE application.

46.     Cigna indirectly infringes one or more claims of the '092 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Cigna's customers and end-users, in this District and throughout the United States. For example, Cigna's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '092 Patent. Cigna induces this direct infringement through its

---

[12] https://apps.apple.com/us/app/mdlive/id839671393

affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, as well as by providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. As a result of Cigna's inducement, Cigna's customers and end-users use the Accused Products in a way Cigna intends and directly infringe the '092 Patent. Cigna performs these affirmative acts with knowledge of the '092 Patent and with the intent, or with willful blindness, that the induced acts directly infringe the '092 Patent.

47.     Cigna indirectly infringes one or more claims of the '092 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and throughout the United States. Cigna's affirmative acts of selling and offering to sell the Accused Products in this District and throughout the United States, and causing the Accused Products to be manufactured, used, sold and offered for sale, contributed to others' use and manufacture of the Accused Products, such that the '092 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '092 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Cigna to be specifically made or adapted for use in the infringement of the '092 Patent. Cigna performs these affirmative acts with knowledge of the '092 Patent and with intent, or with willful blindness, that they cause the direct infringement of the '092 Patent.

48.     Damaka has suffered damages as a result of Cigna's direct and indirect infringement of the '092 Patent in an amount to be proven at trial.

## <u>COUNT III</u>
### (Infringement of the '744 Patent)

49.     Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

50.     Damaka has not licensed or otherwise authorized Cigna to make, use, offer for sale, sell, or import any products that embody the inventions of the '744 Patent.

51.     Cigna has and continues to directly infringe the '744 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '744 Patent. These products include at least all versions and variants of Cigna's MDLIVE mobile applications.

52.     For example, Cigna directly infringes at least claim 20 of the '744 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method comprising: receiving, by a function block stored in the memory of a mobile device, a request for a communication service from a superblock application stored in the memory of the mobile device, wherein the superblock application is configured to access the function block for functionality that is lacking in the superblock application; determining, by the function block, that providing the communication service to the superblock application requires access to an external device; establishing, by the function block, a connection with the external device to support the communication service via a network interface of the mobile device, wherein the establishing is not supported by the superblock application; and providing, by the function block, the communication service to the superblock application, wherein the steps of receiving, determining, establishing, and providing are performed without switching context from the superblock application to another application on the mobile device.

53.    The Accused Products practice a method of receiving, by a function block stored in the memory of a mobile device, a request for a communication service from a superblock application stored in the memory of the mobile device, wherein the superblock application is configured to access the function block for functionality that is lacking in the superblock application. For example, upon information and belief, Cigna's MDLIVE function block is stored in the memory of a mobile device (iPhone). For example, upon information and belief, it may be called by a superblock application which would otherwise not have A/V calling support.

54.    The Accused Products practice a method of determining, by the function block that providing the communication service to the superblock application requires access to an external device. For example, upon information and belief, Cigna's MDLIVE function block requires a remote server in order to provide communication to the superblock application.

55.    The Accused Products practice a method of establishing, by the function block, a connection with the external device to support the communication service via a network interface of the mobile device, wherein such establishing is not supported by the superblock application. For example, upon information and belief, MDLIVE function block allows a user to establish an A/V call between the superblock application and a resource, only after connecting to a remote server. Upon information and belief, this is done over a network, such as, 5G or the internet.

56.    The Accused Products practice a method of providing, by the function block, the communication service to the superblock application, wherein the steps of receiving, determining, establishing, and providing are performed without switching context from the superblock application to another application on the mobile device. For example, upon information and belief, Cigna's MDLIVE A/V capabilities are embedded within a function block of the superblock application, and do not require switching applications.

57.     Cigna indirectly infringes one or more claims of the '744 Patent by knowingly and intentionally inducing others, including Cigna customers and end-users of the Accused Products, as well as products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Cigna's MDLIVE.

58.     Cigna indirectly infringes one or more claims of the '744 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Cigna's customers and end-users, in this District and throughout the United States. For example, Cigna's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '744 Patent. Cigna induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, as well as by providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. As a result of Cigna's inducement, Cigna's customers and end-users use the Accused Products in a way Cigna intends and directly infringe the '744 Patent. Cigna performs these affirmative acts with knowledge of the '744 Patent and with the intent, or with willful blindness, that the induced acts directly infringe the '744 Patent.

59.     Cigna indirectly infringes one or more claims of the '744 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and throughout the United States. Cigna's affirmative acts of selling and offering to sell the Accused Products in this District and throughout the United States, and causing the Accused Products to be manufactured, used, sold and offered for sale contributes to others' use

and manufacture of the Accused Products, such that the '744 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '744 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Cigna to be specifically made or adapted for use in the infringement of the '744 Patent. Cigna performs these affirmative acts with knowledge of the '744 Patent and with intent, or with willful blindness, that they cause the direct infringement of the '744 Patent.

60.     Damaka has suffered damages as a result of Defendants' direct and indirect infringement of the '744 Patent in an amount to be proven at trial.

### COUNT IV
#### (Infringement of the '046 Patent)

61.     Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

62.     Damaka has not licensed, or otherwise authorized Cigna to make, use, offer for sale, sell, or import any products that embody the inventions of the '046 Patent.

63.     Cigna has and continues to directly infringe the '046 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '046 Patent. These products include, without limitation, all versions, and variants of Cigna's MDLIVE.

64.     For example, Cigna directly infringes at least claim 11 of the '046 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method implemented in a function block associated with an electronic device having a network interface, comprising: accessing a resource via the network interface to provide a service to a superblock application on the electronic device, wherein the service is not otherwise supported by the superblock application, and wherein the function block is accessible only to the superblock

application on the electronic device; and providing the service to the superblock application without switching context from the superblock application to another application on the electronic device.

65.     The Accused Products practice a method implemented in a function block associated with an electronic device having a network interface. For example, upon information and belief, Cigna's MDLIVE is a function block that may be associated with an iPhone (an electronic device with a network interface).

66.     The Accused Products practice a method of accessing a resource via the network interface to provide a service to a superblock application on the electronic device, wherein the service is not otherwise supported by the superblock application, and wherein the function block is accessible only to the superblock application on the electronic device. For example, upon information and belief, Cigna's MDLIVE function block accesses remote servers via the network interface of, for example, the iPhone.

67.     The Accused Products practice a method of providing the service to the superblock application without switching context from the superblock application to another application on the electronic device. For example, upon information and belief, Cigna's MDLIVE function block is completely embedded in the superblock application and requires no switching to a different application to provide the function blocks functionality.

68.     Cigna indirectly infringes one or more claims of the '046 Patent by knowingly and intentionally inducing others, including Cigna customers and end-users of the Accused Products, as well as products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Cigna's MDLIVE.

69.     Cigna indirectly infringes one or more claims of the '046 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Cigna's customers and end-users, in this District and throughout the United States. For example, Cigna's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '046 Patent. Cigna induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and by providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. As a result of Cigna's inducement, Cigna's customers and end-users use the Accused Products in a way Cigna intended and thereby directly infringe the '046 Patent. Cigna performs these affirmative acts with knowledge of the '046 Patent and with the intent, or with willful blindness, that the induced acts directly infringe the '046 Patent.

70.     Cigna indirectly infringes one or more claims of the '046 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and throughout the United States. Cigna's affirmative acts of selling and offering to sell the Accused Products in this District and throughout the United States, and causing the Accused Products to be manufactured, used, sold and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '046 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '046 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Cigna to be specifically made or adapted for use in the infringement of the

'046 Patent. Cigna performs these affirmative acts with knowledge of the '046 Patent and with intent, or with willful blindness, that they cause the direct infringement of the '046 Patent.

71.     Damaka has suffered damages as a result of Defendants' direct and indirect infringement of the '046 Patent in an amount to be proven at trial.

<u>**COUNT V**</u>
**(Infringement of the '362 Patent)**

72.     Paragraphs 1 through 20 are incorporated by reference as if fully set forth herein.

73.     Damaka has not licensed or otherwise authorized Cigna to make, use, offer for sale, sell, or import any products that embody the inventions of the '362 Patent.

74.     Cigna has and continues to directly infringe the '362 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '362 Patent. These products include at least all versions and variants of Cigna's MDLIVE.

75.     For example, Cigna directly infringes at least claim 1 of the '362 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method for enabling an end-to-end connection for a first user and a second user to participate in a real-time communication session over the internet, the method comprising: creating for storage on a server, a superblock application configured for use by a computing device of the first user and a superblock application configured for use by a computing device of the second user, wherein each of the superblock applications has a function block compiled therein, wherein each respective superblock application communicates with its respective function block using application programming interface (API) calls; receiving, by the superblock application on the computing device of the first user, a request to initiate a real-time communication session with the second

user; communicating, by the superblock application on the computing device of the first user, the request to a remote resource; providing, by the superblock application on the computing device of the second user, a notification that the real-time communication session with the first user is being requested; identifying, by the superblock application on the computing device of the second user, rendering information; and rendering, by the superblock application on the computing device of the second user, the real-time communication session with the first user using the rendering information.

76.    The Accused Products practice a method for enabling an end-to-end connection for a first user and a second user to participate in a real-time communication session over the internet. For example, Cigna's MDLIVE allows two users to communicate via audio and video in real time.



---

13 https://apps.apple.com/us/app/mdlive/id839671393

77.     The Accused Products practice a method of creating for storage on a server, a superblock application configured for use by a computing device of the first user and a superblock application configured for use by a computing device of the second user, wherein each of the superblock applications has a function block compiled therein, wherein each respective superblock application communicates with its respective function block using application programming interface (API) calls. For example, upon information and belief, MDLIVE connects physicians (one MDLIVE user) to patients (other MDLIVE users), wherein both users must have MDLIVE installed on their respective devices. For example, upon information and belief, Cigna's MDLIVE must call a function block which enables the superblock application (MDLIVE) to communicate with the other MDLIVE user.

78.     The Accused Products practice a method of receiving, by the superblock application on the computing device of the first user, a request to initiate a real-time communication session with the second user. For example, upon information and belief, when a MDLIVE user wants to initiate a call with a different MDLIVE user (such as a physician or patient), the callee receives the caller's request.

79.     The Accused Products practice a method of communicating, by the superblock application on the computing device of the first user, the request to a remote resource. For example, upon information and belief, Cigna's MDLIVE must communicate with Cigna's remote servers.

80.     The Accused Products practice a method of providing, by the superblock application on the computing device of the second user, a notification that the real-time communication session with the first user is being requested. For example, upon information and belief, Cigna's MDLIVE provides a notification that the real-time communication session is being requested.

81.    The Accused Products practice a method of identifying, by the superblock application on the computing device of the second user, rendering information. For example, Cigna's MDLIVE renders, and identifies, both caller information and callee information.



82.    The Accused Products practice a method of rendering, by the superblock application on the computing device of the second user, the real-time communication session with the first user using the rendering information. For example, Cigna's MDLIVE renders both caller and callee information, as shown above.

83.    Cigna indirectly infringes one or more claims of the '362 Patent by knowingly and intentionally inducing others, including Cigna customers and end-users of the Accused Products, as well as products that include the Accused Products, to directly infringe, either literally or under

---

[14] https://apps.apple.com/us/app/mdlive/id839671393

the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Cigna's MDLIVE.

84.    Cigna indirectly infringes one or more claims of the '362 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Cigna's customers and end-users, in this District and throughout the United States. For example, Cigna's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '362 Patent. Cigna induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, as well as by providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. As a result of Cigna's inducement, Cigna's customers and end-users use the Accused Products in ways that Cigna intends, thereby directly infringing the '362 Patent. Cigna performs these affirmative acts with knowledge of the '362 Patent and with the intent, or with willful blindness, that the induced acts directly infringe the '362 Patent.

85.    Cigna further indirectly infringes one or more claims of the '362 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and throughout the United States. Cigna's affirmative acts of selling and offering to sell the Accused Products in this District and nationwide, and causing the Accused Products to be manufactured, used, sold and offered for sale contributes to the use and manufacture of the Accused Products by others, such that the '362 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention claimed in the '362 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing

uses, and are known by Cigna to be specifically made or adapted for use in the infringement of the '362 Patent. Cigna performs these affirmative acts with knowledge of the '362 Patent and with intent, or with willful blindness, that they cause the direct infringement of the '362 Patent.

86.    Damaka has suffered damages as a result of Defendants' direct and indirect infringement of the '362 Patent in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Damaka prays for relief against Cigna as follows:

a.    Entry of judgment declaring that Cigna has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b.    Entry of judgment declaring that Cigna's infringement of the Patents-in-Suit is willful;

c.    An order awarding damages sufficient to compensate Damaka for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs;

d.    Entry of judgment declaring that this case is exceptional and awarding Damaka its costs and reasonable attorneys' fees under 35 U.S.C. § 285;

e.    An accounting for all acts of infringement;

f.    Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

g.    Such other and further relief as the Court deems just and proper.

Dated: May 30, 2025

Respectfully submitted,

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
Jacob Ostling
NY Bar No. 5684824
Email: jostling@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile:  (212) 257-5796

***ATTORNEYS FOR PLAINTIFF***
***DAMAKA, INC.***